United States District Court
Southern District of Texas

**ENTERED**

May 12, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **KAMAL KUMAR GIRI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00149** |
| | § | |
| **TODD LYONS,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

Pending before the Court is Petitioner Kamal Kumar Giri's ("Petitioner" or "Mr. Giri") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

**Background**

**A. Immigration Background**

Petitioner is a 30-year-old noncitizen, originally from Nepal, who came to the United States in January of 2025. (Dkt. 1 at 5.) He is married and has two children who remain in his native country of Nepal. (*Id.*) Mr. Giri fled Nepal because of political persecution which involved attempted drowning and severe beating. (*Id.*) He fled his native country in August of 2024 and entered the United States on or around January 26, 2025. (*Id.*; *see* Dkt. 12 at 2.) Petitioner entered the United States shortly after the Trump Administration issued Proclamation 10888. *See*

1 / 28

Proclamation No. 10888, Guaranteeing the States Protection Against Invasion, 90 Fed. Reg. 8,333 (Jan. 20, 2025) ("Proclamation 10888").

Proclamation 10888 and subsequently issued agency guidance "suspend[ed] the entry of any person who has crossed the southern border outside a designated port of entry, as well as any person crossing at a designated entry port anywhere without sufficient documentation." *Refugee & Immigrant Ctr. for Educ. & Legal Servs., et al. v. Mullin*, 2026 WL 1110616, at *1 (D.C. Cir. Apr. 24, 2026).  Importantly, "[t]he Proclamation and Guidance also subject[ed] those individuals who have entered the country despite the entry ban to new summary removal procedures without the rights the [Immigration and Nationality Act (INA)] provides to seek asylum or other removal protections." *Id.*

Petitioner entered without inspection and was apprehended by immigration officials shortly after entering. (Dkt. 1 at 5; Dkt. 12 at 2.) He expressed fear of returning to Nepal, after which he was interviewed by an asylum officer who found he demonstrated a credible fear. (Dkt. 1 at 5.) Because Petitioner entered shortly after after Proclamation 10888 had been issued, he was not given a full opportunity to pursue asylum and other protections from removal, but instead was subject to summary removal procedures. (*Id.*) On July 16, 2025, an Immigration Judge (IJ) ordered Petitioner removed. (*Id.* at 6.)

However, on July 2, 2025, the United States District Court for the District of Columbia ruled that the Trump Administration's Proclamation and closing of the border to asylum seekers was unlawful. *See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 111 (D.D.C. 2025), *aff'd sub nom. Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026). The District Court's decision was recently upheld by the United States District of Columbia Circuit Court. *See Refugee & Immigrant Ctr. for*

*Educ. & Legal Servs.*, 2026 WL 1110616, at *1. Following the district court's order, in November of 2025 DHS issued a Notice to Appear to Mr. Giri, which placed him in INA Section 240 proceedings and allows him an opportunity to present a full case for asylum and potential relief from removal. (Dkt. 1 at 6.) Thus, approximately ten months after he first entered the United States, Petitioner was given the opportunity to pursue asylum and other protections under the INA. (*Id*. at 9.)

Petitioner has remained in immigration detention since he entered the United States on January 26, 2025. (*Id*. at 5.) He has been incarcerated in continuous immigration detention for over 15 months. (*See id.*)

### B. Statutory Framework

Mandatory detention is authorized under 8 U.S.C. § 1225(b)(1) for applicants for admission who are subject to expedited removal. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (noncitizens "subject to the procedures under this clause *shall* be detained pending a final determination of credible fear of prosecution and, if found not to have such a fear, until removed." (emphasis added)); *see also id.* § 1225(b)(1)(B)(ii) (directing that if the immigration officer determines that a noncitizen subject to expedited removal "has a credible fear of persecution . . . the alien *shall* be detained for further consideration of the application for asylum" (emphasis added)).

"Section 1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A)." *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The Supreme Court has decided that "the plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Id*. With the exception of temporary

parole under 8 U.S.C. § 1182(d)(5)(A), "there are no other circumstances under which aliens detained under [Section] 1225(b) may be released." *Jennings*, 583 U.S. at 300; *see also Matter of M-S-*, 27 I. & N. Dec. 509, 509 (A.G. 2019) (deciding that noncitizens subject to expedited removal who pass their credible fear interview and are placed in 8 U.S.C. § 1229a [INA Section 240] proceedings are subject to § 1225(b)(1)(B)(ii)).

Petitioner entered the United States, was apprehended upon entry, and has remained detained since. (Dkt. 1 at 5.) He is currently detained while his application for asylum is pending. (*Id*.) Thus, Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which states that if an immigration officer finds a credible fear of persecution during the Expedited Removal process, an "alien shall be detained for further consideration of the application for asylum." *See Jennings*, 583 U.S. at 299 (Section 1225(b) "mandates detention of aliens throughout the completion of applicable proceedings").

## C. Procedural Background

Petitioner filed the instant Habeas Petition on February 2, 2026, arguing that his current prolonged, continuous detention violates his rights under the Due Process Clause of the Fifth Amendment. (Dkt. 1.) Petitioner asserts that his detention is not "reasonably related to a legitimate government purpose" because Respondents have not shown any justification of the need for detention, and that "[a]s with all civil detention, ordinarily there must be an individualized determination of the need for detention focused on the justifications given (here, flight risk, danger to the community, or threat to national security), with independent review." (Dkt. 1 at 13, 10) (citing *United States v. Salerno*, 481 U.S. 739, 751–52 (1987); *Reno v. Flores*, 507 U.S. 292, 309 (1993); *Jackson v. Indiana*, 406 U.S. 715 (1972)). Petitioner further argues that "[b]ecause [his

detention] has no foreseeable end, it is potentially indefinite, in addition to being prolonged, and therefore violates Due Process." (Dkt. 1 at 12.)

The Court ordered Respondents to show cause and respond by February 12, 2026. (Dkt. 5.) Respondents filed a timely Response and Motion for Summary Judgment, arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and that his current detention is lawful. (Dkt. 12.) Respondents argue that Petitioner's current detention does not constitute a Fifth Amendment due process violation. (*Id*. at 5–7.) First, Respondents argue that substantive due process protects only those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and that detention for the limited period of removal proceedings does not violate substantive due process. (*Id.* at 5). Second, Respondents argue that Petitioner's procedural due process claim fails because Petitioner is only entitled to as much process as Congress has provided by statute, and 8 U.S.C. § 1225(b) does not require Petitioner to have a bond hearing.

Petitioner filed a timely reply asserting that Respondents failed to rebut Petitioner's arguments that his current detention violates his Fifth Amendment due process rights. (Dkt. 15.) Additionally, on April 28, 2026, Petitioner submitted a request for prompt ruling. (Dkt. 19.)

<u>**Legal Standard**</u>

### A. 28 U.S.C. § 2241

A district court has jurisdiction to grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The writ of habeas corpus is "perhaps the most important writ known to the

constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Accordingly, a district court's habeas jurisdiction includes challenges to the lawfulness of immigration-related detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 703 (W.D. Tex. 2025) (citations omitted).

### B. Rule 56(a)

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs.*, L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id.* (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 603 (2015)).

6 / 28

**Discussion**

The central question before the Court is whether Petitioner's immigration detention of over 15 months without an individualized determination of the need for detention violates his rights under the Due Process Clause of the Fifth Amendment. The Court first analyzes its jurisdiction to hear Petitioner's claims. Finding that the Court has jurisdiction, the Court begins its analysis with establishing that the Due Process Clause of the Fifth Amendment, which protects freedom from bodily restraint, entitles Petitioner to due process protections against arbitrary and punitive civil detention. Finding that noncitizens such as Petitioner who are detained upon entry are entitled to Fifth Amendment due process protections in the context of their detention, the Court then evaluates the constitutional limits on prolonged immigration detention. Finally, analyzing Petitioner's due process claim under the *Mathews* framework, the Court finds that Petitioner's continuous detention of over 15 months has become unconstitutionally prolonged and is no longer reasonably related to its statutory purpose.

**A. Jurisdiction**

Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); s*ee also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The primary federal habeas corpus statute confers federal subject matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of

7 / 28

immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); 8 U.S.C. § 1252. The Court considers the jurisdiction stripping provisions in 8 U.S.C. § 1252(g), (b)(9), (e), and (a)(2) below.

### 1.  8 U.S.C. § 1252(g)

The Court concludes that 8 U.S.C. § 1252(g) does not bar review of Mr. Giri's unlawful detention claim. As pertains to Petitioner's claims, district courts may not review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). However, the Fifth Circuit "has long recognized that [§ 1252(g)] is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). The Supreme Court has cautioned against reading § 1252(g) broadly, instead reaffirming that "[w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Moreover, the Fifth Circuit has held "[s]ection 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted). Thus, 8 U.S.C. § 1252(g) cannot bar review of Petitioner's detention claim.

### 2.  8 U.S.C. § 1252(b)(9)

Similarly, the Court concludes that 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction to hear Petitioner's claim. The Supreme Court has indicated that where a Petitioner is

8 / 28

not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte*, 27 F.4th at 1056–57; *see also Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015). Here, Petitioner does not challenge the decision to detain him in the first place, but rather whether his current immigration detention of over 15 months, without any individualized determination as to the need for detention, has become unconstitutionally prolonged. Thus, 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction to hear Mr. Giri's claim that his prolonged detention by DHS violates his rights under the Fifth Amendment. *See Duarte*, 27 F.4th at 1056 ("where review of an agency determination involves neither a determination as to the validity of [a noncitizen's] deportation orders or the review of any question of law or fact arising from their deportation proceedings, . . . (b)(9) should not operate as a bar to the district court's review.").

### 3. 8 U.S.C. § 1252(e)

The Court also briefly considers jurisdiction stripping provision 8 U.S.C. § 1252(e) as it is applicable to noncitizens such as Petitioner who enter the United States and are subject to § 1225(b)(1). 8 U.S.C. § 1252(e) reads in part that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any *action pertaining to an order to exclude* an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection[.]" (emphasis added). Here, Petitioner does not request relief in an action pertaining to an order to exclude under 8 U.S.C. § 1225(b)(1), indeed Petitioner does not challenge an order of removal at all, rather Petitioner challenges the lawfulness of his ongoing detention. *See Brumme v. I.N.S.*, 275 F.3d 443, 446 (5th Cir. 2001) (upholding a district court's determination that 8 U.S.C.

9 / 28

§ 1252(e) stripped the court of jurisdiction to hear a petitioner's claim where "[t]he real issue [Petitioner] asked the district court to address, however, was whether she was admissible or entitled to relief from removal"); *Barrientos v. Baltazar*, 2024 WL 5455686, at *4 (S.D. Tex. Dec. 18, 2024), *R&R adopted*, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025) ("While Congress has limited habeas review of removal decisions made under § 1225(b)(1), Petitioner is not challenging his expedited removal order, and, thus, his claim is not barred by § 1252."). Petitioner's case is not about whether he is properly subject to an expedited removal order (which the Court cannot consider), rather it is about whether his Fifth Amendment rights are violated by his current detention under 8 U.S.C. § 1225.

### 4. 8 U.S.C. § 1252(a)(2)

Finally, the Court addresses 8 U.S.C. § 1252(a)(2) which states in relevant part that "[n]ot withstanding" "any other habeas corpus provision" "no court shall have jurisdiction to review" any "cause or claim arising from or relating to the implementation or operation of an order of removal" under 8 U.S.C. § 1225(b)(1); a decision to "invoke the provisions" of 8 U.S.C. § 1225(b)(1); "the application" of 8 U.S.C. § 1225(b)(1); or "procedures and policies adopted by the Attorney General to implement" 8 U.S.C. § 1225(b)(1). Absent an express statement from Congress that the Court is stripped of its jurisdiction to hear Petitioner's habeas petition challenging only his current prolonged detention, the Court does not read 8 U.S.C. § 1252(a)(2)(A) to limit consideration of a noncitizen's constitutional challenge to his detention.

Petitioner does not ask the Court to review Respondents' decision to initiate expedited removal proceedings under 8 U.S.C. § 1225(b)(1), nor their decision to detain him under the mandatory detention provisions of 8 U.S.C. § 1225(b)(1), rather he raises a constitutional challenge to the ongoing, prolonged nature of his mandatory detention without an individualized

10 / 28

determination of the need for detention. *See da Silva v. Nielsen*, 2019 WL 13218461, at \*4–5 (S.D. Tex. Mar. 29, 2019) (recognizing the court had jurisdiction to hear such claims); *Maldonado v. Macias*, 150 F. Supp. 3d 788 (W.D. Tex. 2015) (same); *Rashid v. Trump*, 807 F. Supp. 3d 349, 358 (D. Vt. 2025) (same). Moreover, Petitioner is not challenging the merits of a removal order, his removability, or anticipatorily seeking relief from removal. Mr. Giri is challenging only the lawfulness of his detention, rather than challenging the "procedures and policies adopted by the Attorney General to implement" expedited removal proceedings. *See* 8 U.S.C. § 1252(a)(2).

Therefore, nothing in 8 U.S.C. § 1252 strips the Court of its power to review Mr. Giri's constitutional claims that his ongoing detention has become unconstitutionally prolonged.

**B. Whether Petitioner is Entitled to Fifth Amendment Due Process Protections in the Context of His Immigration Detention**

To address Petitioner's claims under the Fifth Amendment, the Court must first begin with establishing that Petitioner, as a noncitizen detained upon entry and subject to continuous mandatory detention, is entitled to Fifth Amendment due process protections in the context of his current detention. First, the Court discusses the right to freedom from bodily restraint; second, the Court analyzes whether Petitioner, as a noncitizen subject to the "entry fiction," is entitled to Fifth Amendment protections against deprivation of his liberty without due process of law.

**1. Noncitizens are Entitled to Protection from Arbitrary and Punitive Civil Detention under the Fifth Amendment**

Importantly, the text of the Fifth Amendment does not distinguish among citizens and noncitizens; rather, it provides that no "person" may be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. As is well established, the Fifth Amendment's Due Process Clause applies to noncitizens and guarantees them constitutional protections. *See Zadvydas*, 533 U.S. at 693; *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("even aliens

11 / 28

shall not be . . . deprived of life, liberty, or property without due process of law"); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Generally, therefore, the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas*, 533 U.S. at 693.

Critically, freedom from bodily restraint is a right listed in the due process clause of the Fifth Amendment: "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]" Const. amend. V. Freedom from bodily restraint "has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution." *Id*. at 90 (Kennedy, J., dissenting).

For this reason, civil immigration detention is permissible only to the extent that it is reasonably related to the statutory purposes of ensuring appearance at proceedings and protecting the community from danger. *See Zadvydas*, 533 U.S. at 690 ("The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect."); *Foucha*, 504 U.S. at 72 ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States,* 463 U.S. 354, 368 (1983)); *Wong Wing*, 163 U.S. at 235 ("detention or temporary confinement, *as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens*, would be valid" (emphasis added)); *see also Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (stating that

civil commitment was permitted where "the confinement takes place pursuant to proper procedures and evidentiary standards").

Here, Respondents argue that Petitioner, as a noncitizen who was detained upon entry, is not entitled to the protections guaranteed by the Fifth Amendment Due Process Clause. Specifically, Respondents argue that "[s]ubstantive due process protects 'only those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" (Dkt. 12 at 5) (citing *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).

However, the *Glucksberg* analysis is not the appropriate framework to apply to Petitioner's claim that his current prolonged detention deprives him of his liberty without due process of law. Challenges to bodily imprisonment are not assessed under a *Glucksberg* analysis, which requires identifying a "fundamental right" that generally may not be infringed "at all, no matter what process is provided." *Glucksberg*, 521 U.S at 721. Under the *Glucksberg* test, the Court is required to analyze whether the right in question is deeply rooted in this Nation's history and tradition and to assess whether "heightened protection" is warranted for certain "liberty interests," that are unenumerated. *Id.* at 720; *see also Muñoz*, 602 U.S. at 903, 910 (describing the *Glucksberg* test). However, "freedom from bodily restraint," is not an unenumerated right. Given that freedom from confinement is the prototypical "liberty" that the Fifth Amendment expressly protects, the *Glucksberg* test is irrelevant. Thus, the Court need not start with the question of whether there is a right to freedom from bodily restraint that is deeply rooted in this Nation's history and tradition because it is indisputable that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process]

Clause protects" and that noncitizens are entitled to protections under the Fifth Amendment Due Process Clause. *See Zadvydas*, 533 U.S. at 690.

### 2. The Entry Fiction Does Not Foreclose Petitioner's Fifth Amendment Challenge to his Prolonged Detention

The Court must address how the constitutional rights of someone like Mr. Giri may differ from noncitizens who were not detained upon entry. The Court recognizes that in addition to the general rule that the Due Process Clause applies to all persons, the Supreme Court has noted distinctions "between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958).  The Supreme Court explained in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) that constitutional rights may apply with greater force to noncitizens physically within the United States than to noncitizens at the threshold of entry. "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma*, 357 U.S. at 187 (citing *Mezei*, 345 U.S. at 212).

As explained in *Mezei*, for those noncitizens who were detained by immigration officials upon entry into the United States and are held in immigration detention, the noncitizen's detention on United States' soil does not legally constitute an entry though the noncitizen is physically within the United States. *Mezei*, 345 U.S. at 212, 215 ("such temporary arrangements [do] not affect[ ] a[ ] [noncitizen]'s status; he is treated as if stopped at the border."). Therefore, inadmissible noncitizens who were detained upon entry, such as Petitioner, are subject to the "entry fiction"—although they are detained on U.S. soil they are not considered to have "entered" the United States. *See Zadvydas*, 533 U.S. at 693.

14 / 28

The entry fiction derives from the idea that "'the power to admit or exclude aliens is a sovereign prerogative; the Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (citations omitted). Indeed, recognizing that noncitizens subject to the entry fiction have been treated differently in terms of the constitutional protections they are afforded, some courts have held that the Fifth Amendment provides no due process protections with regard to the need for the Government to justify the prolonged civil immigration detention of noncitizens in Petitioner's position who were detained immediately upon entering the United States. *See, e.g.*, *Acosta v. Arteta*, 2026 WL 263470, at *7 (S.D.N.Y. Feb. 2, 2026) ("This Court is bound by the Supreme Court's holding in *Mezei* that Congress defines the process due to an alien who has not been admitted into the United States.").

However, the Court finds that the entry fiction doctrine, as articulated in *Mezei*, does not foreclose Petitioner's Fifth Amendment challenge to his prolonged detention. *See Rashid*, 807 F. Supp. 3d at 366; *Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 809 F. Supp. 3d 135, 142–43 (S.D.N.Y. 2025). The Court recognizes that in deciding Mezei's case, the Supreme Court observed that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212. However, "[t]he context in which *Mezei* was decided matters." *Rashid*, 807 F. Supp. 3d at 366. "The case, decided at the height of the Cold War, 'explicitly tailored its holding to the national security context.'" *Id*. (citation omitted). The Court in *Mezei* recognized that noncitizens subject to removal proceedings generally may be released on bond, 345 U.S. at 215, but emphasized that "an exclusion proceeding grounded on

danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists." *Id*. at 216.

In Mezei's case, "the Attorney General had already found, on an individualized basis, . . . that Mezei was a security risk and consequently not entitled to either admission or bail." *Jennings*, 583 U.S. at 340 (Breyer, J., dissenting). Here, no such determination has been made. Thus, *Mezei* may compel the conclusion that noncitizens already excluded on national security grounds are not entitled to a bond hearing, but it does not foreclose Petitioner's current claim that the Fifth Amendment Due Process Clause protects him from arbitrary and punitive civil detention as a noncitizen held for over 15 months during the pendency of his removal proceedings.[1]

The Supreme Court's recent holding in *Department of Homeland Security v. Thuraissigiam* further delineates the due process rights of noncitizens subject to the entry fiction. In *Thuraissigiam*, a noncitizen asylum seeker (Thuraissigiam) was apprehended by DHS "25 yards" into the United States and issued an expedited order of removal. 591 U.S. at 114. Thuraissigiam's asylum claim was deemed non-credible, and he filed a habeas petition thereafter. *Id*. at 114–15. He argued, in part, that "IIRIRA violates his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 138. The Supreme Court, relying in part on its ruling in *Mezei*, rejected Thuraissigiam's attempt to challenge his removal proceedings under both the Suspension Clause and the Due Process Clause, holding that "an alien in

---

[1] The Court also notes that since *Mezei*, the Supreme Court's holdings in *Zadvydas* and *Clark v. Martinez*, 543 U.S. 371 (2005) further support the notion that those subject to the entry fiction are entitled to constitutional protections with regard to their detention. *See Zadvydas*, 533 U.S. 678 (holding that post-removal-period detention statute, 8 U.S.C. § 1231(a), read in light of the Constitution's demands, implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that noncitizen's removal from the United States, and does not permit indefinite detention); *Clark*, 543 U.S. 371 (holding that the rule in *Zadvydas* applies equally to inadmissible noncitizens).

[Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute." *Id.* at 140.

Unlike in *Thuraissigiam*, Petitioner does not "challeng[e] any part of the process by which [his] removability will be determined." *See Jennings*, 583 U.S. at 292–94 (concluding that claims regarding detention under 8 U.S.C. § 1225 did not "aris[e] from any . . . proceeding brought to remove an alien"). Thus, while *Thuraissigiam* dictates that a noncitizen subject to the entry fiction such as Petitioner "has only those rights *regarding admission* that Congress has provided by statute" it does not control the question of what due process protections Petitioner is entitled to in the context of his prolonged, mandatory detention. *See Thuraissigiam*, 591 U.S. at 140 (emphasis added). Here, Petitioner does not ask that he be admitted into the country nor does he seek additional process with regard to his removal proceedings; the only thing he asks for is that the Government provide him with a meaningful review of the need for his *detention* while his asylum application remains pending.

To hold that Petitioner is not entitled to Fifth Amendment due process protections in the context of his current prolonged detention because he is subject to the entry fiction would be to decide that there are not constitutional limits on his civil immigration under 8 U.S.C. § 1225. The Court rejects this stark conclusion. "The 'entry fiction' that excludable aliens are to be treated as if detained at the border despite their physical presence in the United States determines the aliens' rights with regard to immigration and deportation proceedings. It does not limit the right of excludable aliens detained within United States territory to humane treatment." *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987). Under the Government's view, DHS could permanently detain those subject to the entry fiction at detention facilities, no matter how long, arbitrary, or capricious such detention may be. *See Al-Thuraya*, 809 F. Supp. 3d at 144. In short,

17 / 28

noncitizens "subject to the 'entry fiction' may possess fewer rights than other categories of [noncitizens], but all persons physically on U.S. soil, regardless of their immigration status, are entitled to *some* due process protection, including protection from prolonged, indefinite, and otherwise unreviewable detention pursuant to § 1225(b)." *Bermudez Paiz v. Decker, et. al.*, 2018 WL 6928794, at *12 (S.D.N.Y. Dec. 27, 2018) (citations omitted).

### C. Courts have Recognized Due Process Limits to Detention in Analogous Contexts

The Supreme Court's rulings in *Carlson v. Landon*, 342 U.S. 524 (1952), *Zadvydas, Demore,* and *Jennings* suggest strongly that the Due Process Clause places *some* limits on mandatory immigration detention. *See Black v. Decker*, 103 F.4th 133, 143–45 (2d Cir. 2024) (discussing *Zadvydas*, *Demore*, and *Jennings* and finding that noncitizens' due process rights are violated by unreasonably prolonged detention); *see also Banegas Avila v. Frink*, 4:26-cv-00916, Dkt. No. 13, at *3–6 (S.D. Tex. Apr. 10, 2026) (explaining that *Zadvydas, Carlson*, and *Demore* support the conclusion that immigration detention must be reasonably related to its statutory purpose and there are constitutional limits on prolonged detention during removal proceedings). Indeed, the Supreme Court has repeatedly emphasized that prolonged immigration detention raises constitutional concerns. *See Carlson*, 342 U.S. at 538–46 ("[d]etention is necessarily a part of this deportation procedure" but "[i]t should be noted that the problem of habeas corpus after unusual delay in deportation hearings is not involved in this case") (citation omitted); *Zadvydas*, 533 U.S. at 689 (holding that the post-removal-period detention statute, 8 U.S.C. § 1231(a), read in light of the Constitution's demands, implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that noncitizen's removal from the United States, and does not permit indefinite detention); *Jennings*, 583 U.S. at 314 (remanding the case for the court of appeals to consider the claimants' Due Process Clause claims in the first instances and stressing that "'[d]ue

18 / 28

process is flexible'[;] . . . it 'calls for such procedural protections as the particular situation demands.'") (citations omitted)).

Furthermore, the Supreme Court has recognized the constitutional concerns with prolonged detention in the context of other mandatory detention statutes. For example, in Justice Kennedy's concurring opinion in *Demore*, he explained that "since the Due Process Clause prohibits arbitrary deprivations of liberty," mandatory detention under 8 U.S.C. § 1226(c) might violate due process "if the continued detention became unreasonable or unjustified." 538 U.S. at 532 (Kennedy, J., concurring). He elaborated that "[w]ere there to be an unreasonable delay by the [Immigration and Nationality Service] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33.

Since *Demore*, numerous circuit courts have analyzed whether a noncitizen subject to mandatory detention under 8 U.S.C. § 1226(c) may have a constitutional due process right to a bond hearing when their detention becomes unreasonably prolonged. The First, Second, and Third Circuits have applied fact specific balancing tests for determining when mandatory detention is no longer reasonably related to its statutory purpose under 8 U.S.C. § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020) (applying a multi-factor test to determine whether prolonged immigration detention constitutes a due process violation); *Black*, 103 F.4th at 138 (holding that due process challenges to prolonged detention should be reviewed using the three factor balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (holding that mandatory detention for six months without a bond hearing is not *per se* unconstitutional, and that the district court erred in providing declaratory and injunctive relief, but recognizing that the Due Process Clause imposes

19 / 28

some form of reasonableness limitation on the duration of mandatory detention); *see also Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433 (3d Cir. 2026) (recognizing that "[t]he Government had no reasonable basis in law for contesting [the petitioner's] petition for a bond hearing after over 16 months in detention without one.").[2] The Eighth Circuit has taken another approach, reasoning that "the government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024). The Fifth Circuit has yet to address due process challenges to mandatory detention under 8 U.S.C. § 1226(c).[3]

While no circuit courts appear to have addressed the question of prolonged detention in the 8 U.S.C. § 1225 context, "[m]ost judges who have squarely faced the question" have held that arriving noncitizens, or noncitizens detained upon entry, cannot be detained for an unreasonably

---

[2] For its part, the Ninth Circuit has yet to take a position on the issue of mandatory prolonged detention under 8 U.S.C. § 1226(c) but has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), *vacated on other grounds*, 144 S. Ct. 1339 (2024).

[3] The Court notes that in a divided, unpublished opinion, the Fifth Circuit briefly considered a habeas petition filed by a noncitizen detained under 8 U.S.C. § 1226(c) and found that "the district court did not err by denying [the petitioner's] § 2241 petition" because he failed to "meet the statutory requirements for release under Section 1226(c)(2)." *Wekesa v. United States Att'y*, 2022 WL 17175818, at *1 (5th Cir. 2022) (unpublished). Although the panel briefly acknowledged that the petitioner raised a due process challenge, it did not address the petitioner's due process claim nor the facts underlying the case. *Id*. Judge Dennis dissented, stating that "[w]ith respect, the majority's observation that, per *Jennings*, § 1226(c) mandates detention without bail is apropos of nothing [the petitioner] argues." *Id*. at *2. He noted that the Supreme Court's decision in *Jennings* expressly left open the question of whether the Constitution entitles immigration detainees to some additional process, such as a bond hearing, in the context of their prolonged detention. *Id*. at *2. He also recognized that *Demore* did not foreclose the petitioner's claim and explained that "to detain someone without bail is to deprive them of liberty" and "to detain someone with no hearing on whether they are eligible for bail is to do so without process." *Id*. In his view, "prolonged detention without a bond hearing implicates due process protections and must be analyzed further" because the Fifth Amendment protects "citizens and non-citizens alike." *Id*. (citations omitted).

20 / 28

prolonged period of time without a bond hearing. *See Rashid*, 807 F. Supp. 3d at 365 (citing *Bermudez Paiz*, 2018 WL 6928794, at *10); *Maldonado*, 150 F. Supp. 3d 788; *Angel v. Duke*, 2017 WL 11698492 (S.D. Tex. Dec. 18, 2017); *da Silva*, 2019 WL 13218461; *N.Z.M. v. Wolf*, 2020 WL 2813557 (S.D. Tex. May 28, 2020); *see also Al-Thuraya*, 809 F. Supp. 3d at 143 (collecting cases); *Leonteva v. Noem*, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026) ("[T]he Court once again finds support for this conclusion in numerous similar cases applying due-process constraints to § 1225(b)(2)(A) detention."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) ("[N]umerous federal district courts have provided bond hearings to arriving noncitizens in prolonged detention in the wake of *Jennings*."); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019) ("[E]veryone seems to agree that, under the Due Process Clause, neither group of aliens can be detained indefinitely (at least without some kind of showing that they are likely to flee or harm the community).")

The Court agrees with the majority of circuit courts which recognize that mandatory immigration detention is subject to constitutional limits and the numerous district courts that have found the same logic applies in the 8 U.S.C. § 1225 context. "As with § 1226(c), mandatory detention without an initial bond hearing may not pose a problem at first; expedited removal of arriving noncitizens and the summary removal of stowaways generally occur swiftly, and mandatory detention without a bond hearing may serve the legitimate function of preventing flight during that brief phase." *Rashid*, 807 F. Supp. 3d at 365. However, "at some point, additional procedural protections—like a bond hearing—become necessary." *Black*, 103 F.4th at 145.

### D. Petitioner's Prolonged Detention Violates His Fifth Amendment Rights Under a *Mathews* Analysis

Having found that the Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under 8 U.S.C. § 1225(b); the question becomes, at what point

do additional procedural protections—like a bond hearing—become necessary. As discussed above, circuit courts and district courts across the country have established different fact specific inquiries to determine whether prolonged detention during removal proceedings, at some point, violates a noncitizen's due process rights. As discussed below, the Court finds that *Mathews* provides the appropriate framework through which to analyze the reasonableness of prolonged mandatory detention. Accordingly, the Court assesses Petitioner's claims under the *Mathews* framework and finds that Petitioner's continued detention without any individualized determination of the need for detention is no longer reasonably related to 8 U.S.C. § 1225(b)(1)'s statutory purpose.

### a. *Mathews* Framework

The Court agrees with those courts that have found that *Mathews* appropriately allows for the consideration of individual circumstances and comports with the Supreme Court's guidance in *Jennings* that "'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *See Rodriguez v. Frink*, 2026 WL 709487, at *7 (S.D. Tex. Mar. 13, 2026) (quoting *Black*, 103 F.4th at 148). Moreover, the Supreme Court has applied *Mathews* "to examine the adequacy of procedures provided to individuals in custody, including noncitizens legally present in the United States." *Black*, 103 F.4th at 148 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *Addington v. Texas*, 441 U.S. 418, 425–33 (1979)).

"The flexible *Mathews* framework can also account for the factors that other courts have found relevant in the immigration detention context, such as the length of detention, whether it is likely to continue, the likelihood of a final order of removal, and whether the detention has punitive elements." *Rodriguez*, 2026 WL 709487, at *7. Thus, *Mathews* provides the appropriate

22 / 28

framework for deciding whether Petitioner's detention has become unreasonably prolonged such that it requires additional process to conform with constitutional limits on civil detention. Under *Mathews* the Court must consider the procedures used to determine the need for detention, the Petitioner's private interest at stake, the risk of erroneous deprivation, and the Government's interest in detention. *See Mathews*, 424 U.S. 319.

### 1. Petitioner's Private Interest in Liberty from Detention is Significant

The Court first considers Petitioner's private interest and finds that the first *Mathews* factor weighs heavily in favor of granting relief. Mr. Giri's private interest at stake is "the most elemental of liberty interests—the interest in being free from physical detention[.]" *See Hamdi*, 542 U.S. at 529 (citing *Foucha*, 504 U.S. at 80); *see also Parham v. J. R.*, 442 U.S. 584, 600 (1979) (noting the "substantial liberty interest in not being confined unnecessarily"). Mr. Giri has been incarcerated in continuous immigration detention for over 15 months. During this time, he cannot work, he cannot establish a life, and he cannot enjoy open communication with his wife, children, and family members.

Moreover, "[t]he individual's liberty interest increases over time, and the risk of an erroneous deprivation of liberty may become more egregious[.]" *Rashid*, 807 F. Supp. 3d at 365. "The longer the duration of the incarceration, the greater the deprivation." *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020). "Where the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention." *Id*. Therefore "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853 (citing *Zadvydas*, 533 U.S. at 701). "[B]ecause the mandatory detention statute 'is premised upon the alien's

presumed deportability and the government's presumed ability to reach the removal decision within a brief period of time,' as 'the actualization of these presumptions grows weaker or more attenuated, the categorical nature of the detention will become increasingly unreasonable.'" *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Here, Petitioner has already remained detained for over 15 months, a period of detention that many other courts have found to be unreasonably prolonged. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention . . . approximately one year. District courts have found shorter lengths of detention . . . without a bond hearing to be unreasonable") (collecting cases). And Petitioner's detention has been prolonged through no fault of his own and instead is largely due to changing policies of different presidential administrations. (Dkt. 15 at 6.) Petitioner contends that his detention may continue for several years, as he awaits adjudication of his asylum claim, and if his claim is denied any potential time needed to appeal. (Dkt. 15 at 5–6.) Finally, the Court further agrees with the Third Circuit's determination that the fact that Petitioner has remained diligent in pursuing good faith challenges to his removal does not diminish his private interest or the prolonged nature of his detention. *German Santos*, 965 F.3d at 211. To hold otherwise "would 'effectively punish [an alien] for pursuing applicable legal remedies.'" *Id*. (citation omitted).

### 2. The Risk of Erroneous Deprivation is Severe, and the Probable Value of Additional Procedural Safeguards is Great

As previously discussed, "[t]he proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. The Supreme Court has recognized that generally, immigration detention has "two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Id*.; *Demore*, 538 U.S. at 527–28 (noting that detention during pending removal

proceedings under 8 U.S.C. § 1226(c) serves these dual purposes); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (generally when making a custody determination, an immigration judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk"). Therefore, if Mr. Giri is "being detained despite the fact that he is neither a flight risk nor a danger to the community, the Government is erroneously depriving him of his freedom." *Rashid*, 807 F. Supp. 3d at 369.

The current procedures for someone in Mr. Giri's position are minimal. As previously noted, apart from temporary parole under 8 U.S.C. § 1182(d)(5)(A), "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Jennings*, 583 U.S. at 300 (citation omitted). Importantly, the regulations allowing noncitizens to request parole do not provide for an opportunity to present evidence, do not specify a standard of proof, and have no specified timeline for consideration. *Ahmed v. Decker*, 2017 WL 6049387, at *7 (S.D.N.Y. Dec. 4, 2017); 8 C.F.R. § 212.5(b); 8 U.S.C. § 1182(d)(5)(A). Moreover, such requests are not considered by a neutral judicial arbiter and are instead discretionarily considered by DHS officials and are unreviewable by an immigration judge or federal court. *Ahmed*, 2017 WL 6049387, at *7. Additionally, humanitarian parole determinations consider whether a noncitizen presents an urgent humanitarian need or significant public benefit, and while a parole decision necessarily considers whether the noncitizen is a danger or a flight risk, its purpose is not to provide a meaningful opportunity for review of the ongoing need for prolonged immigration detention during removal proceedings. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

The risk of erroneous deprivation is also heightened by the fact that Petitioner has been found to have a credible fear by an immigration officer, has asserted defenses to his removal, and has diligently pursued his asylum application. "The Court need not inquire into the strength of

these defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, WL 2357266, at *11. Petitioner has not received *any* process to consider whether his current detention of over 15 months serves a legitimate purpose, therefore the Court finds that the risk of erroneous deprivation weighs in Petitioner's favor.

### 3. The Government's Interest in Detaining Petitioner Without a Hearing is Minimal

Finally, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Court recognizes the Government has a strong interest in ensuring that noncitizens appear for their removal proceedings and in ensuring that the public is kept safe. *See Demore*, 538 U.S. at 527–28. However, additional procedural safeguards in the form of a bond hearing "do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees. *See Black*, 103 F.4th at 153–54 (citing 8 U.S.C. § 1226(a)). Indeed, requiring that the Government justify continued detention *promotes* the Government's interest in minimizing the enormous impact of incarceration in cases where it serves no purpose. *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854). Similarly, should the Government find that Petitioner is not a flight risk nor a danger, the Government benefits from the reduced cost of no longer detaining petitioner. Finally, there is minimal administrative burden where immigration courts already regularly make custody determinations for noncitizens pending their removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19; 8

26 / 28

C.F.R. § 236.1. Thus, the Court finds that the final *Mathews* factor also weighs in Petitioner's favor.

### E. Remedy

Having found that Petitioner's current prolonged detention of over 15 months violates his Fifth Amendment due process rights, the Court must now determine the appropriate remedy. In cases addressing prolonged detention under 8 U.SC. § 1226(a) and 8 U.S.C. § 1226(c), courts have determined that the appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is needed to prevent the noncitizen from fleeing during their removal proceedings or harming the community. *See Black*, 103 F.4th at 155; *German Santos*, 965 F.3d at 213–14.

The Second Circuit has reasoned that a custody redetermination hearing at which the Government has the burden is the appropriate remedy after mandatory immigration detention has become unconstitutionally prolonged because 1) most noncitizens are unrepresented and therefore at a disadvantage when arguing for their release, 2) many detained noncitizens have difficulty communicating with counsel even if they are represented, 3) requiring that detainees prove that they are not a danger or flight risk presents too great a risk of erroneous deprivation after a noncitizen's detention has already become unreasonably prolonged, and 4) the Supreme Court has consistently held the government must prove dangerousness or flight risk by clear and convincing evidence in other detention contexts. *Black*, 103 F.4th at 155–57. The Court finds that the same reasoning applies to the current prolonged detention context, and that the appropriate remedy is a bond hearing at which the Government bears the burden of proving that detention is necessary because Petitioner poses either a danger or a flight risk by clear and convincing evidence. *See Rashid*, 807 F. Supp. 3d at 372 (deciding the same in the 8 § U.S.C. 1225(b) context); *Banda*, 385

F. Supp. 3d at 1120; *M.T.B. v. Byers*, 2024 WL 3881843, at \*5 (E.D. Ky. Aug. 20, 2024); *Al-Thuraya*, 809 F. Supp. 3d at 139; *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1095 (S.D. Cal. 2025).

<u>**CONCLUSION**</u>

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED IN PART. Respondents' response and Motion for Summary Judgment, (Dkt. 12), is DENIED. Petitioner's Motion for Entry of Order, (Dkt. 19), is DENIED as MOOT.

1. Respondents are **ORDERED** to provide Petitioner with an individualized custody review before an immigration judge at which (1) the Government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a risk of flight or a danger to the community; and (2) the adjudicator is required to meaningfully consider alternatives to imprisonment such as community-based alternatives to detention including conditional release, as well as Petitioner's ability to pay a bond. Respondents must provide this hearing **<u>on or before May 15, 2026 at 5 P.M. Central Standard Time or else release Petitioner.</u>**

2. The Parties are **ORDERED** to file an update with the Court by <u>**May 18, 2026**</u>, informing the Court of the result of the hearing and Petitioner's custody status.

IT IS SO ORDERED.

SIGNED this May 12, 2026.

_____
Diana Saldaña
United States District Judge